# GRECO v MOOSBRUGGER DRUG CO.

Common Pleas Court, Montgomery Co.

No. 91047. Decided June 19, 1941

Clyde H. Miller, Dayton, for plaintiff.

Baggott & Baggott, Dayton, for defendant.

### OPINION

By MILLS, J.

This cause comes on before the court to be heard upon a petition herein filed by plaintiff, a minor, for wages which he claims were due him under the Minimum Wage Law, §§154-45d to 154-45t GC. The agreed statement of facts and the briefs set forth all the facts necessary to determine the issue. Therefore, the court will not repeat the agreed statement of facts.

The first issue for the court to determine is whether or not, under Mandatory Order No. 3, gov-

erning women and minors working in establishments at occupations relating to the furnishing of food (in solid or liquid form) or lodging or both, the defendant, Otto Moosbrugger was conducting a restaurant in operating his soda fountain.

The briefs of plaintiff and defendant are rather exhaustive and in detail and in the court's opinion are very well written. Sec. 843-2 GC, defines the term restaurant: "Every building or other structure kept, used, maintained, advertised, or held out to the public to be a place where meals or lunches are served for consideration, without sleeping accommodations, shall, for the purpose of this act be defined a restaurant."

Webster's dictionary defines restaurant as a public eating house.

Bouvier's law dictionary defines restaurant as an eating house.

The Imperial dictionary defines it as a commercial establishment for the sale of refreshments; a house where cooked food and liquors are sold; an eating house.

Counsel for the defense cites Rex v Stinson (1905) 10 Canadian Criminal Cases, 17, the court in interpreting the Sunday law in reference to the meaning of restaurant business said:

"The modern term restaurant is considered the equivalent of victualing house. Victualing house is a house where provision is made for strangers to eat; an eating house. The same test must be applied whether the establishment be called restaurant or victualing house. Looking at the act, the only test applicable is 'necessity'. A meal means food and drink. But, it is said, to quench thirst is as much a matter of necessity as to satisfy hunger. If the keeper can sell food as a necessity, why can not he sell drink? Drink, not in the shape of liquor, need not necessar-ily be taken with food. Admitting this to be the case, can the articles, the sale of which is complained of here, he said fairly to be a necessity? That they are grateful and comforting does not mean that they are necessary, or that people require them. They are not meals in the fair, ordinary sense of the word."

Now what did defendant, Moosbrugger, sell and serve at his soda fountain as set forth in the agreed statement of facts: Ice cream, sodas, sundaes, malted milks, hot chocolate made of water and a powdered preparation, bottled soft drinks and packaged crackers. These articles were sold at the soda fountain and also sold at tables in the south room. In the north room, candies, nuts, candy mints and chewing gum were sold.

Plaintiff claims that the sale of these articles made this drug store a restaurant or a restaurant department, and the defendant claims it did not. Plaintiff relies upon the definition of "food" as contained in Mandatory Order No. 3, which is as follows:

"Food, means any consumable article, cooked or uncooked, prepared or ready to eat or drink; and beverages such as milk, fruit and/or vegetable juices of any and all flavors; and ice cream in its several varied forms."

Plaintiff in his brief claims that this would cover whiskey which is nothing more than fermented and distilled vegetable juices. It would also include cough drops, cod liver oil capsules, etc., and plaintiff claims anyone selling these articles, which could possibly be consumed on the premises is operating a restaurant. Defendant claims if that is operating a restaurant, then every gasoline station, cigar

counter and vending machine is a restaurant, claiming that coca cola and soft drinks are sold at gasoline filling stations, packaged nuts at cigar counters and of course nuts and candy from vending machines.

Now the definition of the word "meal" under Order No. 3, paragraph 9 (a) is defined as follows:

"Meal as used in this order means any quantity of liquids and/or solids sufficient to satisfy the average hunger of a person utilizing normal energy in the course of his or her work, the said liquids or solids to be of good quality, freshly prepared, adequately seasoned and cleanly served either in an employees' dining room or in any other sanitary room apart from the kitchen."

Counsel for defense claims that under this definition that preparation and seasonings are part of the preparation of a meal. The agreed statement of facts says that Otto Moosbrugger did not serve meals or lunches, nor does he hold himself out to the public as doing so, and no meals or lunches were served. That bread and butter is not kept in the store, nor sandwiches prepared, nor can a glass of milk be purchased. There is no stove for the preparation of food, not even a hot plate; no condiments such as salt, pepper, mustard, catsup, etc., were kept to be served.

The Act itself does not describe nor define a restaurant and the only place the court sees it is described or defined is by the administrative board under Minimum Fair Wage Standards in Mandatory Order No. 3. It is the court's opinion that the departmental order of the Industrial Relations Division of Minimum Wage in defining its regulations shall be confined to the ordinary accepted meaning of the word "restaurant" rather than a narrower interpretation of "food" and "meal" and "drink", etc., made by this body or department. It is the opinion of the court that if this administrative body wanted to follow this to the nth degree that they would include filling stations, vending machines, pop stands, etc., because it is apparent that the chemical analysis made of water, even, would show some food value, depending upon the minerals that the water contained, and no one would admit that a pop stand or a fountain where water is served is a restaurant under the interpretation of this Act. Yet that would be carrying this definition to the nth degree and would be a very broad interpretation of this Act of this administrative order.

It is the opinion of the court that this Act should be interpreted in its narrower construction and its reasonable construction. It is, therefore, the court's opinion that the defendant's place of business, to-wit, his soda fountain where he dispenses the articles enumerated, is, and was not a restaurant within in the meaning of this Act. It is therefore, unnecessary for the court to go further in its decision except to say that by reason of the fact it is not a restaurant within the meaning of this Act, that plaintiff having been paid as set forth in plaintiff's petition and defendant's answer, is not entitled to the relief prayed for in plaintiff's petition.

Counsel will draw their entry accordingly.